Present:   All the Justices

CLIFFORD ROBINSON
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 061911              June 8, 2007

COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the driver of a

vehicle was involved in an accident within the intendment of

Code § 46.2-894, a penal statute.  This statute states in

relevant part:

> "The driver of any vehicle <u>involved in an</u>
> <u>accident</u> in which a person is killed or injured or
> in which an attended vehicle or other attended
> property is damaged shall immediately stop as close
> to the scene of the accident as possible without
> obstructing traffic . . . and report his name,
> address, driver's license number, and vehicle
> registration number forthwith to the State Police or
> local law-enforcement agency, to the person struck
> and injured if such person appears to be capable of
> understanding and retaining the information, or to
> the driver or some other occupant of the vehicle
> collided with or to the custodian of other damaged
> property.  The driver shall also render reasonable
> assistance to any person injured in such accident,
> including taking such injured person to a physician,
> surgeon, or hospital if it is apparent that medical
> treatment is necessary or is requested by the
> injured person.
>
>                      . . . .
>
> "Any person convicted of a violation of this
> section is guilty of (i) a Class 5 felony if the
> accident results in injury to or the death of any
> person, or if the accident results in more than
> $1000 of damage to property or (ii) a Class 1
> misdemeanor if the accident results in damage of
> $1000 or less to property."

Clifford Robinson, Jr., was indicted by a Spotsylvania County grand jury for reckless driving and for the felony failure to stop and provide certain information in violation of Code § 46.2-894. At a bench trial, the circuit court convicted Robinson of reckless driving and fixed his punishment at six months in jail. The circuit court convicted Robinson of violating Code § 46.2-894 and fixed his punishment at two years imprisonment, which was suspended, and a fine of $1,000. The Court of Appeals affirmed the judgment of the circuit court. Robinson v. Commonwealth, 48 Va. App. 623, 633 S.E.2d 737 (2006). We awarded Robinson an appeal limited solely to a review of his conviction based upon the violation of Code § 46.2-894.

The following evidence was adduced at trial. On June 2, 2004, around noon, Robinson was driving a sports utility vehicle on Gordon Road in Spotsylvania County. He stopped his vehicle to comply with a traffic control signal at the intersection of Gordon Road and Harrison Road. Christine Antonuccio, who was driving a Mustang automobile, stopped her car beside Robinson's vehicle, at the same intersection. The traffic light was red. Justin Antonuccio, who was four years old, was seated in the rear of Christine Antonuccio's car.

2

Gordon Road consists of four lanes; two lanes permit motor vehicle operators to travel north, and the other two lanes permit motor vehicle operators to travel south.  The posted speed limit is 40 miles per hour.  Approximately one-tenth of a mile immediately south of the intersection where Robinson and Antonuccio had stopped their vehicles, the two lanes of travel on Gordon Road gradually merge into a single lane.  Two traffic signs contain the following warnings: "Single Lane Ahead" and "Merge Right."  Robinson's vehicle was situated in the right lane, and he had the right-of-way.  Antonuccio's vehicle was situated in the left lane, which merged into Robinson's lane, and she was required to yield the right-of-way.

There were no imperfections on the surface of the road. The road was dry; the sun was shining; and visibility was clear.

Once the traffic control signal changed to green, Robinson and Antonuccio began to drive their respective vehicles south on Gordon Road.  As Robinson began to drive his vehicle, Antonuccio accelerated her car, and the two vehicles were "side by side."  Franklin McNeal Fleming, a deputy sheriff with the Spotsylvania County Sheriff's Office, testified about the following facts Robinson had provided during Fleming's investigation of the accident.

3

"[Robinson] was sitting at the light at Harrison Road on Gordon Road. He was in the curb lane at the traffic signal, and the signal was red. He looked to his left and he saw a red car pull up alongside of him. He couldn't see who was driving the vehicle.

"When the light turned green, [Robinson] started to drive off. At that time the red car started to accelerate and was keeping steady with him, side by side. [Robinson] was in the proper lane. The red car had to merge in front of him. The red car kept coming at the same speed. Mr. Robinson stated, having lived in the area for 17 years, he had seen other cars in the left lane cut off drivers in that right lane, referring to the lane that he was in.

"[Robinson] did say, quote, after 30 years in the Marine Corps, I wasn't backing down. He continued to drive at the same time the red car continued to speed up. As they approached the spot where the two lanes merge he backed down. The red car had too much horsepower for his vehicle, and if he hadn't slowed down [Robinson] would have crashed.

"After the red car was in front of [Robinson], it started – went out of control and the car hit some trees. [Robinson] drove past the crash and then turned around and drove back to the – to the driveway nearest the crash.

"And there was a . . . gentleman – he didn't know the gentleman's name – that was trying to pull some tree branches off of the car. [Robinson] exited his vehicle and met the . . . man at the car and he, himself, pulled limbs off of the vehicle and attempted to, to get to the female who was still inside the car. At that point he noticed she was moving and she was making some sounds, but he couldn't tell what sounds that they were.

"A short time later a trooper appeared. And at that time the trooper allowed a gentleman in a van to leave, and that's when [Robinson] left the scene. He stated he did not want any part of what had happened."

Fleming testified that he asked Robinson why he had not permitted Antonuccio to drive her car in front of his vehicle

4

and thereby merge. Robinson responded that "he was frustrated about people cutting others off all the time when they tried to merge at that location." Robinson told Fleming that Robinson was traveling between 45 and 50 miles per hour when Antonuccio tried to enter into his lane of travel. There was no physical contact between Antonuccio's car and Robinson's vehicle.

Robinson testified that when the traffic control light turned green, he "inten[ded] to lead in such a way that [Antonuccio] could come in behind [his vehicle]." Robinson accelerated his vehicle "briskly," thereby preventing Antonuccio from merging her car in front of his vehicle. When Antonuccio refused to reduce the speed of her car, Robinson "backed down because both lives were endangered [and] the cars would have collided."

Fleming concluded, based upon his examination of Antonuccio's speedometer after the accident, that she was traveling 76 miles per hour when she lost control of her car. Fleming testified that Antonuccio's car "went into a yaw." According to Fleming, a yaw occurs "when the tires are still rotating as the rubber is scrubbing against the roadway pavement. Unlike a skid mark where you have a heavy black line, with a yaw you actually [have] striations of the tire and the tire tread as it's still in motion."

5

Antonuccio's car created 150 feet of yaw marks on the road surface, and she never applied her brakes. After her car left the roadway, the car traveled 38 feet and "crashed" into a tree. The car struck another tree, and the car was "almost cut in half." Antonuccio and her child died as a result of injuries they incurred from the accident.

Fleming testified without objection that after Antonuccio drove her car "totally inside" the merged lane, she had ample opportunity to slow down. There were approximately "a hundred fifty to two hundred feet from the end of the merge, or the end of the left lane, to the point where [the] yaw mark begins."

The day after the accident, sheriff's deputies, who had received an anonymous tip, visited Robinson at his home. They discussed the accident with him. They examined his sports utility vehicle. They observed "pits and . . . cracks" in the windshield and damage caused by gravel and rock debris when Antonuccio's car left the roadway and traveled on the gravel shoulder.

Robinson argued in the Court of Appeals, and argues in this Court, that he was not involved in the accident within the intendment of Code § 46.2-894. He contends that Antonuccio lost control of her vehicle after he had reduced the speed of his car to allow her to merge into his lane of

6

travel, although he had the right-of-way.  He argues that Antonuccio lost control of her car because of her rapid acceleration or excessive speed.  Continuing, Robinson states that the circuit court found that he was not responsible for the accident and that he did not cause the deaths of Antonuccio and her child.  Responding, the Commonwealth asserts that Robinson was involved in the accident.

This Court has not had an occasion to discuss the meaning of the word "involved" within the intendment of Code § 46.2-894.  "Involved" is not defined within Code § 46.2-894 or elsewhere in the Code of Virginia.

The construction of a statute is a question of law that we review de novo upon appeal.  Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007); Dowling v. Rowan, 270 Va. 510, 519, 621 S.E.2d 397, 401 (2005).  When construing penal statutes, a court must not add to the words of the statute, nor ignore its actual words, and must strictly construe the statute and limit its application to cases falling clearly within its scope.  Farrakhan, 273 Va. at 181, 639 S.E.2d at 230; Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).  Additionally, "every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary."  Hubbard

<u>v. Henrico Ltd. Partnership</u>, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998).

The Commonwealth urges this Court to apply the definitions of "involve" that the Court of Appeals utilized. The Court of Appeals relied upon numerous dictionary definitions of the word "involve" and concluded that Robinson's conduct was within the intendment of Code § 46.2-894. The Court of Appeals stated in its opinion:

> " 'Involve' is defined, in pertinent part, as 'to draw in as a participant,' to 'implicate,' 'to relate closely,' to 'connect,' 'to have an effect on,' to 'concern directly,' to 'affect.' " Webster's Third New International Dictionary 1191 (1993). Nothing in these definitions suggests that, for purposes of determining criminal liability under Code § 46.2-894, a driver must have legally caused an accident in order to be considered 'involved' in the accident."

48 Va. App. at 635-36, 633 S.E.2d at 743.

Upon our review of the language in Code § 46.2-894, we note that the word "involved" is used as a participle modifying a noun. There are 19 definitions of the word "<u>involved</u>" and the word "<u>involve</u>" in Webster's Third New International Dictionary, the source upon which the Court of Appeals relied in its opinion. The use of such expansive definitions of a word in a penal statute is contrary to our well-established principle that when a statute "is penal in nature, it must be strictly construed against the state and

8

limited in application to cases falling clearly within the language of the statute." Turner, 226 Va. at 459, 309 S.E.2d at 338.

We explained this principle in McKay v. Commonwealth, 137 Va. 826, 830, 120 S.E.2d 138, 139 (1923):

> "A penal statute cannot be extended by implication or construction.  It cannot be made to embrace cases not within the letter though within the reason and policy of the law.
> "To constitute the offense the [defendant's conduct] must be both within the letter and spirit of the statute defining it.  Those who contend that a penalty is imposed must show that the words of the act distinctly cover the case.  No conviction can be had if the words are merely equally capable of a construction that would, and one that would not, inflict the penalty.
> "If a penal statute be so ambiguous as to leave reasonable doubt of its meaning, it is the duty of the court to refuse to impose the penalty."

Accord Berry v. Chesapeake, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969); Price v. Commonwealth, 209 Va. 383, 385-86, 164 S.E.2d 676, 678-79 (1968); McKinney v. Commonwealth, 207 Va. 239, 243, 148 S.E.2d 829, 831-32 (1966).

The numerous definitions of the word "involve" used by the Court of Appeals would permit a fact finder to find a driver guilty of a felony violation of Code § 46.2-894 even though that driver was lawfully in his or her lane of travel, obeyed all traffic laws, did not have any physical contact with any other vehicle, person, or object, and was not a

9

proximate cause of the accident.  Surely, the General Assembly did not contemplate such an expansive and far-reaching result.

Upon application of the rule of strict construction and the language contained in Code § 46.2-894, including the word "involved," we conclude that in order for a driver of a vehicle to be involved in an accident within the intendment of the statute, there must be physical contact between the driver's vehicle and another vehicle, person, or object, or the driver of a motor vehicle must have been a proximate cause of an accident.  And, we note, that in the application of legal principles pertinent to a finding of proximate causation, we have held that "[t]hese principles are constant whether considered in a civil or criminal context."  Gallimore v. Commonwealth, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993).  This definition of the word "involved" within the intendment of Code § 46.2-894 is consistent with the requirement that penal statutes provide clear guidance to the public of the specific conduct that is commanded or proscribed.  We have repeatedly held that a statute that creates a criminal offense "must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited . . . so that a person of ordinary intelligence may know what is thereby required of him."  Swisher v. Commonwealth, 256 Va. 471, 486, 506 S.E.2d 763, 771 (1998) (quoting Caldwell v. Commonwealth,

10

198 Va. 454, 458, 94 S.E.2d 537, 540 (1956)); McCutcheon v. Commonwealth, 224 Va. 30, 35, 294 S.E.2d 808, 811 (1982).

Applying this definition, we hold that Robinson was not involved in the accident within the intendment of Code § 46.2-894.  The vehicle Robinson was operating did not have any physical contact with Antonuccio's vehicle.  The circuit court expressly found that Robinson was not a cause of the accident.  Indeed, Robinson reduced the speed of his vehicle, which did not exceed 50 miles per hour, and ultimately allowed Antonuccio to enter into his lane of travel.  Deputy Fleming, who testified without objection as an expert witness on the subject of accident reconstruction, stated that Antonuccio had "ample opportunity to slow . . . down once merging in that hundred fifty to two hundred feet" of roadway before she lost control of her car, left the road, and collided into two different trees.

Accordingly, we will reverse the judgment of the Court of Appeals, and we will dismiss Robinson's conviction for violation of Code § 46.2-894.

Reversed and dismissed.