661 S.E.2d 488

Shakil **EDWARDS**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0894–07–2.**

Court of Appeals of Virginia,
Richmond.

May 27, 2008.

Horace F. Hunter, Hunter & Lipton LLP, Richmond, for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: FELTON, C.J., and CLEMENTS and BEALES, JJ.

FELTON, Chief Judge.

Shakil Edwards (appellant) was convicted of petit larceny in violation of Code § 18.2–96, and possession of a burglarious tool in violation of Code § 18.2–94. Appellant contends the evidence was insufficient as a matter of law to convict her of

violating Code § 18.2–94, contending that the purse she possessed at the time she committed larceny was not a burglarious "tool." [1] For the following reasons, we conclude that appellant's purse was not a "tool," "implement," or "outfit" within Code § 18.2–94. We reverse appellant's conviction for possession of a burglarious tool and dismiss that indictment.

## I. BACKGROUND

The facts are not in dispute. On June 23, 2006, appellant entered a department store in Chesterfield County with three other women. Each woman carried a purse that "appeared to be concave" and not "full like a typical woman's purse looks." A department store loss prevention officer (security officer), using a closed-circuit television monitoring system, observed the women taking clothing from the children's and juniors' sections of the store and carrying those items into an area consisting of separate fitting rooms. The women entered the fitting room area one or two at a time, each using one of two fitting rooms located "at the end" of that area. As the women exited the fitting rooms, their purses appeared "larger in size." Once the women left, the security officer entered the fitting rooms, found empty hangers on the floor, and discovered that merchandise was missing from the children's and juniors' sections.

Appellant and the other women were detained after they left the store. Appellant had four items of children's clothing valued at $156 concealed inside her purse. The three other women also had stolen merchandise in their purses. Other than the stolen merchandise, three of the four women's purses were completely empty. [2] The women admitted they entered the store to steal merchandise.

A Chesterfield County police officer was called to the scene. Appellant admitted that she had stolen the items in her purse from the department store. She was arrested and charged

---

1. Appellant's conviction for petit larceny is not before us on appeal.

2. The fourth woman's purse contained one pair of slippers.

with grand larceny in violation of Code § 18.2–95, and possession of burglarious tools in violation of Code § 18.2–94.

At trial, appellant moved to strike the evidence at the conclusion of the Commonwealth's case-in-chief. She argued that her purse was not a burglarious tool. The trial court denied the motion, concluding that appellant intentionally entered the department store with an empty purse to conceal the stolen merchandise. During her testimony, appellant admitted to stealing children's clothing. When asked why she was "carrying an empty purse around," she stated, " 'cause I wanted to go to the store and steal.' " She renewed her motion to strike at the conclusion of the evidence, arguing again that her purse was not a burglarious tool. The court denied appellant's motion, finding that the purse "was used to steal, and . . . it fits within the statutory definition of burglar[ious] tools." [3] Appellant was convicted of possession of burglarious tools and grand larceny. At the sentencing hearing on March 27, 2007, the court vacated the grand larceny conviction, and found appellant guilty of petit larceny of the clothing appellant concealed inside her purse. She was sentenced to twelve months imprisonment for petit larceny, with six months suspended, and five years imprisonment for possession of burglarious tools, all of which was suspended. This appeal followed.

## II. ANALYSIS

On appeal, appellant concedes she entered the department store intending to use the purse she was carrying to commit larceny, but argues that a purse is not a burglarious tool within the meaning of Code § 18.2–94. The Commonwealth contends that, because appellant intended to use an empty purse to conceal merchandise, the purse is an "outfit" under Code § 18.2–94. Our task on appeal is to determine

---

3. While the trial court concluded the purse constituted a "burglarious tool" under the statute, it did not make a specific finding that the purse was a "tool," "implement," or "outfit" within the meaning of the statute.

whether the legislature intended to consider an empty purse used to facilitate shoplifting a "tool," "implement," or "outfit" under Code § 18.2–94. "Because this is a question of law involving the construction and application of Code § 18.2–94, we review the trial court's determination *de novo.*" *Williams v. Commonwealth,* 50 Va.App. 337, 340, 649 S.E.2d 717, 718 (2007).

"Violations of Code § 18.2–94 are sometimes referred to generally as 'possession of burglary tools.'" *Moss v. Commonwealth,* 29 Va.App. 1, 3 n. 1, 509 S.E.2d 510, 511 n. 1 (1999). However, "Code § 18.2–94 is somewhat broader than its title implies." *Williams,* 50 Va.App. at 340, 649 S.E.2d at 718. It provides:

> If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary or larceny.

"Code § 18.2–94 requires proof that the offending tools, implements or outfit were intrinsically 'burglarious' only when the Commonwealth relies upon the statutory presumption to establish the requisite criminal intent." *Moss,* 29 Va.App. at 4–5, 509 S.E.2d at 512. The presumption embraced by the statute applies only to "such offending articles innately *burglarious* in character, [that is] those commonly used by burglars in house breaking or safe cracking[,]" *id.* at 4, 509 S.E.2d at 511, "[and] particularly 'suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building . . . vault or safe,'" *id.* (quoting *Burnette v. Commonwealth,* 194 Va. 785, 790, 75 S.E.2d 482, 486 (1953)) (alteration in original). Here, appellant conceded that she intended to use the empty purse she carried into the department store to steal merchandise and, therefore, the Commonwealth was not required to rely on the statutory presumption that a purse is "innately burglarious in charac-

ter." Consequently, we focus our discussion on whether the General Assembly intended to criminalize the use of a purse as a "tool," "implement," or "outfit" within the requirements of Code § 18.2–94.

"The terms 'tools,' 'implements,' and 'outfit' are not defined statutorily." *Williams,* 50 Va.App. at 342, 649 S.E.2d at 719. However, each has been defined in previous decisions of this Court. "The generally accepted definitions of 'tool' are (1) an instrument ([such] as a hammer or saw) used or worked by hand, and (2) an implement or object used in performing an operation or carrying on work of any kind." *Id.* at 343, 649 S.E.2d at 720 (citing *Webster's Third New International Dictionary* 2408 (1993)). "[T]he term 'implement' [ ] refer[s] specifically to items associated with devices, instruments, equipment or machinery as they relate to an occupation or profession, but which are used to facilitate the commission of a burglary, robbery or larceny." *Id.* at 345, 649 S.E.2d at 721.

> The commonly accepted definitions for the word "outfit" include (1) the act or process of fitting out or equipping, (2) materials, tools, or implements comprising the equipment necessary for carrying out a particular project, and (3) wearing apparel designed to be worn on a special occasion or in a particular situation.

*Mercer v. Commonwealth,* 29 Va.App. 380, 384, 512 S.E.2d 173, 175 (1999) (citing *Webster's Third New International Dictionary* 1601 (1993)). " 'Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest.' " *Id.* (quoting *Woolfolk v. Commonwealth,* 18 Va.App. 840, 847, 447 S.E.2d 530, 534 (1994)).

Because a purse is neither "an instrument used or worked by hand," nor "an implement or object used to carry on work," we cannot conclude that appellant's use of an empty purse to conceal stolen merchandise meets the generally accepted definition of a "tool." Likewise, in *Williams,* where we declined to include an empty bag used to conceal merchandise as a

larcenous "implement," we also noted the absurdity of extending the definition of "implement" to include a purse, as a purse is not an item that specifically relates to an occupation or profession. *Williams,* 50 Va.App. at 346, 649 S.E.2d at 721. Finally, although in *Mercer,* 29 Va.App. at 385, 512 S.E.2d at 175, we held that a pair of pants altered to facilitate shoplifting constituted an "outfit" under Code § 18.2–94, we cannot conclude from the plain language of the statute that the General Assembly intended to include the carrying of an empty purse within the meaning of an "outfit" under Code § 18.2–94. To extend the holding of *Mercer* under these facts would require an overly broad interpretation of the term "outfit," rather than one " 'strictly construed against the state and limited in application to cases falling clearly within the language of the statute.' " *Williams,* 50 Va.App. at 344, 649 S.E.2d at 720 (quoting *Robinson v. Commonwealth,* 274 Va. 45, 52, 645 S.E.2d 470, 474 (2007)). Similar to our analysis in *Williams,* when discussing the need to impose a *reasonable* interpretation of the term "implement," we also conclude that an overly broad interpretation of the term "outfit" would result in

> every concealment of merchandise in violation of Code § 18.2–103, regardless of the item's value, . . . constitut[ing] a Class 5 felony under Code § 18.2–94 because any and every item used to accomplish the element of concealment from public view [would satisfy the definition of an "outfit"]. Had the General Assembly intended such a result, they would have punished the crime of concealment accordingly.

*Id.* at 345–46, 649 S.E.2d at 721. *See also, Matter of Charlotte K,* 102 Misc.2d 848, 427 N.Y.S.2d 370, 371 (N.Y.Fam.Ct.1980) ("The tools, instruments or other articles envisioned by [the statute] . . . are those used in taking an item and not in hiding it thereafter. They are the handy gadgets used to break in and pick up, not the bags for carrying out."). Although appellant admitted that she carried an empty purse into the department store on June 23, 2006, because she wanted to "go to the store and steal," we cannot conclude that her intent to conceal stolen merchandise in her purse transformed that purse into a burglarious "tool," "implement," or "outfit."

### III. CONCLUSION

We conclude that the purse appellant possessed at the time she committed petit larceny was not a burglarious "tool," "implement," or "outfit." Therefore, the evidence presented at trial was insufficient as a matter of law to sustain a conviction under Code § 18.2–94. Accordingly, we reverse the judgment of the trial court, vacate appellant's conviction, and dismiss that indictment.

*Reversed and dismissed.*

BEALES, J., dissenting.

I respectfully dissent. I believe that the evidence in this case supports the trial court's factual conclusion that appellant's purse fit within the definition of "outfit" that we articulated in *Mercer v. Commonwealth,* 29 Va.App. 380, 512 S.E.2d 173 (1999).

As a preliminary matter, the majority applies a *de novo* standard of review to decide this issue, citing *Williams v. Commonwealth,* 50 Va.App. 337, 340, 649 S.E.2d 717, 718 (2007). In *Williams,* this Court reviewed *de novo* the term "implement," found in the same statute at issue in this case, Code § 18.2–94, and defined that term for the first time. Since this Court had not previously defined that term in the context of Code § 18.2–94, a *de novo* review on an issue of statutory interpretation was entirely appropriate in that case. However, we have already defined the term at issue here, "outfit," in our decision in *Mercer.* Therefore, I believe that we must here actually apply a mixed standard of review. I submit that we must review the trial court's decision and determine whether the evidence in this record supports the trial judge's conclusion that appellant's purse fits within our previously articulated definition of the term "outfit." [4]

In *Mercer,* we defined "outfit," in the context of its use in Code § 18.2–94, as follows: "The commonly accepted defini-

---

4. Even though the trial court did not specifically find which category of burglarious tool appellant's purse fit within, our standard of review

tions for the word 'outfit' include (1) the act or process of fitting out or equipping, (2) materials, tools, or implements comprising the equipment necessary for carrying out a particular project, and (3) wearing apparel designed to be worn on a special occasion or in a particular situation." 29 Va.App. at 384, 512 S.E.2d at 175. Finding that the pair of pants Mercer had altered to commit larceny was a burglarious tool (burglary tool), we held, "An item of clothing that is altered to facilitate shoplifting can reasonably be considered wearing apparel designed to be worn in a particular situation." *Id.* at 385, 512 S.E.2d at 175.

In this case, appellant used a purse to facilitate her theft of clothes from the store. The trial court, in my estimation, quite reasonably concluded that a purse may be a part of a woman's outfit. However, this purse—or part of appellant's outfit—was not being used as a woman normally uses a purse when appellant carried it with her into the store. This purse did not contain any of the items normally found in a purse. To the contrary, it was completely empty so as to enable this woman to accomplish her admitted purpose of taking it into the store [5]—i.e., to steal by using it to steal and conceal

directs us to affirm the trial court's decision if the empty purse fits within any one of the three categories of burglarious tools. *See generally Gilliam v. Commonwealth,* 49 Va.App. 508, 513–14, 642 S.E.2d 774, 778 (2007) (affirming a conviction for carrying a concealed weapon, in violation of Code § 18.2–308.2, where "[t]he trial court made no specific findings ... [and] never enunciated which description [of a concealed weapon] provided the basis for its finding of guilt." Nevertheless, "on appeal, if there are facts to support the trial court's conclusion that the knife is either one of the enumerated items within the statute, or a 'weapon of like kind,' [this Court is] bound by that conclusion.").

That being said, I am confident—given the arguments of the parties at trial (specifically, the analogies made to a hat and a pair of pants) and the reference by the trial court to pockets in a pair of pants—that the issue at trial and on appeal has been sufficiently focused on whether or not appellant's empty purse was an "outfit" for purposes of the burglarious tool statute.

5. The trial court asked appellant the following questions when appellant/defendant testified at trial:

considerable merchandise. Thus, while the inside of the purse had not had additional pockets sewn into it, as had been done to the pants in *Mercer*, the pocketbook/purse had been changed from the normal state of a purse and was carried with an entirely different purpose than a purse would normally be carried—much as the pants were altered in *Mercer* so that they could be used to conceal merchandise and allow the defendant in *Mercer* to steal. In both cases, this was done to conceal the merchandise that was taken. As such, I believe that the trial court correctly found that the purse in this case fits within the definition we used in *Mercer*. Thus, I find this case more analogous to *Mercer* than it is to *Williams* (in which we held that an ordinary plastic bag was not an "implement" and, therefore, a burglarious tool, for purposes of a conviction under Code § 18.2–94).

That being said, I recognize that the mere possession of "any tools, implements, or outfit" is not prohibited by [Code § 18.2–94]. Such articles "may be, and usually are, designed and manufactured for lawful purposes." The gravamen of the offense arises from the possessor's "intent to use" these "common, ordinary" objects for a criminal purpose specified by statute, burglary, robbery or larceny.

*Moss v. Commonwealth*, 29 Va.App. 1, 3, 509 S.E.2d 510, 511 (1999) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 790, 75 S.E.2d 482, 486 (1953)). Following that logic, I certainly do not believe or suggest that every purse satisfies the definition of a burglary tool. Here, though, appellant clearly used the purse for a purpose other than its ordinary, lawful one, thereby causing it to become something other than an ordinary purse. Like the three other women who went into the store with her and also had empty purses (or in one case, an almost empty purse), appellant completely emptied the purse *before* she went into the store in order to carry out her

Q: Why were you carrying an empty purse around?
A: Oh, 'cause I wanted to go to the store and steal.
Q: And steal?
A: Yes.

admitted intent to steal. The purse did not have any money or a wallet in it so as to enable her to purchase an item, did not contain any identification, or contain anything else. This to me differentiates what this appellant did with this purse from a shoplifter who places an item in a purse that is otherwise being used normally (or perhaps empties an item out of a purse while in the store so as to conceal an item that the individual decides to steal). While still a crime of larceny, the pocketbook used in such a situation would probably not be a burglarious tool because it was being used primarily as a pocketbook. Here, appellant went to some trouble and planning to use part of her outfit in a way that it would normally never be used. She essentially had no purpose for that part of her outfit when she entered that store, but to use it to steal.

The General Assembly could have limited burglarious tools to "tools" and "implements," but chose to include the word "outfit" in the statute. By choosing to include the word "outfit" in Code § 18.2–94, the General Assembly clearly intended to include items plainly defined as such in the definition of burglary tools. Otherwise, I believe the legislature would have simply included only the words "tools" and "implements." Moreover, since the statute also does not provide any special definition for the term "outfit," we are bound to apply that term according to its plain and ordinary meaning, as we did in *Mercer*, 29 Va.App. at 384, 512 S.E.2d at 175. *See also Lee County v. Town of St. Charles*, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002) ("When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language."). I believe that, by reversing the trial court's conclusion that appellant's purse fits within the plain and ordinary meaning of an "outfit" under this statute, this Court essentially holds that a purse or pocketbook may never be considered a burglary tool pursuant to Code § 18.2–94. That is a conclusion I cannot reach.

Therefore, for the foregoing reasons, I would affirm the trial court and appellant's conviction for possession of a burglary tool, in violation of Code § 18.2–94. I believe that the evidence supports the trial court's conclusion that appellant's

purse, which she emptied before entering the store with the express intent to use it to steal, was changed from an ordinary item customarily associated with a woman's outfit into a means to facilitate theft. It, therefore, fits within the definition of "outfit" that we set forth in *Mercer*. It is for those reasons that I must respectfully dissent.