COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


O'DANE GREG MAYE

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2590-09-1                       JUDGE RANDOLPH A. BEALES
                                                           FEBRUARY 8, 2011
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Christopher W. Hutton, Judge

           Kimberly Enderson Hensley (Office of the Public Defender, on
           brief), for appellant.

           Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


        O'Dane Greg Maye (appellant) was convicted of breaking and entering (under Code

§ 18.2-91), shooting inside an occupied dwelling (under Code § 18.2-279), two counts of

malicious wounding (under Code § 18.2-51), and two counts of use of a firearm in the

commission of a felony (under Code § 18.2-53.1).[1]  The sole issue on appeal is whether the trial

court abused its discretion when it ordered restitution.  Because the Supreme Court's decision in

Howell v. Commonwealth, 274 Va. 737, 652 S.E.2d 107 (2007), is controlling on this issue, we

conclude that the trial court abused its discretion when it ordered the part of the restitution

related to an "indirect" financial loss suffered by one of appellant's victims.  Therefore, we

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant pled guilty to these offenses, conditioned on his right to appeal the denial of
his pre-trial motion to admit expert psychiatric testimony and evidence concerning his mental
state at the time of these offenses.  An appeal was not granted on that issue, and, therefore, the
denial of the pre-trial motion is not before this Court on appeal.

reverse the trial court's sentencing order only as to the amount of restitution it imposed, and we remand the case to the trial court to recalculate restitution consistent with the Supreme Court's opinion in Howell.

## I. BACKGROUND

On the night of April 26, 2009, appellant entered a dormitory on the campus of Hampton University and shot the dormitory's night manager (the victim), severely injuring him.[2] The victim spent three days in the intensive care unit of the hospital after the shooting. He was completely bedridden for a period of time after his release from the hospital, which required that he stay with a relative who could help provide care for him rather than return to his own home.

In his victim impact statement, which was admitted into evidence at appellant's sentencing hearing, the victim reported a total loss of $62,615 because of appellant's criminal conduct on April 26, 2009. Of this total, $215 was listed as "direct" economic loss, $60,000 was listed as "indirect" economic loss, and $2,400 was listed as lost wages. Explaining the "indirect" economic loss, the victim testified that a pipe in his home burst while he was convalescing at his cousin's home. As a result, "a flood of water" damaged his house and the possessions inside.[3] "Had I been home," he explained, "I could have caught the problem, and prevented the damage" that occurred after the pipe burst.

The trial court sentenced appellant to a total of 68 years of imprisonment – with 54 years suspended. Moreover, the trial court ordered, *inter alia*, that appellant pay $62,615 in restitution. The trial court actually referred to the $60,000 loss that the victim sustained from the water damage in his home as an "indirect loss."

---

[2] Appellant also shot and injured another person while inside the dormitory.

[3] Insurance covered an unspecified amount of the damage, but the victim testified that he was "out of approximately $60,000.00."

## II. ANALYSIS

Appellant argues that the trial court erred when it ordered restitution for the victim's $60,000 "indirect loss" – a loss that occurred because a water pipe burst inside his home while he was convalescing at his cousin's home. As we are an appellate court reviewing the trial court's sentencing decision under an abuse of discretion standard, Martin v. Commonwealth, 274 Va. 733, 735, 652 S.E.2d 109, 111 (2007), this Court must address whether the trial court's discretion in this case was "'guided by erroneous legal conclusions,'" Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

When a trial court suspends a defendant's sentence or orders probation, the court has authority to order that the defendant "make at least partial restitution" to an "aggrieved party or parties for damages or loss caused by" by the offense or offenses for which the defendant was convicted. Code §§ 19.2-303 and 19.2-305(B); see also Code § 19.2-305.1(A). According to the Supreme Court's opinion in Howell, these sentencing statutes have "limited the scope of restitution a court may order to payments for 'damages or losses caused by the offense.'" Howell, 274 Va. at 740, 652 S.E.2d at 108. Given this statutory limitation on the scope of restitution, the Supreme Court has held that restitution is proper only when a victim's financial loss is actually "caused" by the defendant's offense – not when the financial loss is only "related" to the offense. Id. at 741, 652 S.E.2d at 109.

In Howell, the defendant burglarized the victims' business. After the burglary, the owners "felt forced" to install a security system at the business because one of the owners no longer felt comfortable being alone in the building. Id. at 740, 652 S.E.2d at 108. The cost of this security system was included in the amount of restitution ordered by the trial court. Id. at 739, 652 S.E.2d at 108. This Court affirmed the restitution order, holding that it "was reasonably

- 3 -

related to Howell's criminal activities," but the Supreme Court subsequently reversed the restitution order, holding that "the installation of a security system, while related to Howell's burglary, was not caused by the offense as required by Code §§ 19.2-303, -305(B), -305.1(A)." Id. at 739, 741, 652 S.E.2d at 108, 109. The Supreme Court explained that the "attenuation" was "too great" to warrant ordering restitution for the cost of installing the security system. Id. at 741, 652 S.E.2d at 109.

Although the Supreme Court explained in Howell that "[c]osts that *result only indirectly* from the offense" are "inappropriate for a restitution payment," id. (emphasis added), the Commonwealth here interprets Howell to permit restitution when the defendant's criminal conduct is *a* cause of the victim's financial loss, but not necessarily a *direct* cause. The Commonwealth notes that, at the conclusion of its analysis in Howell, the Supreme Court determined that restitution was improper because the "attenuation" between Howell's criminal conduct and the victims' financial loss was "too great." Id. The Commonwealth contends that an order of restitution can be proper, even when the defendant's criminal conduct is not a *direct* cause of the victim's financial loss, provided that the attenuation is not "too great."

Contrary to the Commonwealth's position, however, the Supreme Court's opinion in Howell provides that, in order for a trial court to order restitution against a defendant, the victim's financial loss must be "caused by the offense," meaning a loss *directly* caused by the offense. The Supreme Court's discussion of pertinent decisions from the United States Court of Appeals for the Fourth Circuit – which, the Supreme Court expressly noted, involved "a federal [restitution] statute similar to ours" in Virginia, id. at 740, 652 S.E.2d at 108 – makes this point clear.

The Supreme Court quoted as instructive the language in a Fourth Circuit opinion, United States v. McMichael, 699 F.2d 193 (4th Cir. 1983), that interpreted the federal restitution statute

to "limit the damages or loss which the defendant can be ordered to repay to 'those which were *directly caused by the offense*.'" Howell, 274 Va. at 740-41, 652 S.E.2d at 108 (emphasis added) (quoting McMichael, 699 F.2d at 195). The Supreme Court also noted the Fourth Circuit's opinion on restitution in United States v. Vaughn, 636 F.2d 921 (4th Cir. 1980), which interpreted the same federal restitution statute as prohibiting courts from ordering "'reimbursement . . . [for] costs [that] *result only indirectly from the offense*.'" Howell, 274 Va. at 741, 652 S.E.2d at 109 (emphasis added) (quoting Vaughn, 636 F.2d at 923).

Discussing these opinions from the Fourth Circuit, the Supreme Court stated, "Costs that result only indirectly from the offense, that are a step removed from the defendant's conduct, *are too remote and are inappropriate for a restitution payment*." Id. (emphasis added). The Supreme Court then reinforced this principle by considering two Kansas state appellate court opinions that also addressed the limitations of restitution orders.

The Supreme Court in Howell noted the Kansas Supreme Court's holding in State v. Beechum, 833 P.2d 988 (Kan. 1992), that "[n]ot all *tangential* costs incurred as a result of a crime should be subject to restitution.'" Howell, 274 Va. at 741, 652 S.E.2d at 109 (emphasis added) (quoting Beechum, 833 P.2d at 994). The Supreme Court then discussed State v. Chambers, 138 P.3d 405 (Kan. Ct. App. 2006), in which the Kansas Court of Appeals applied the holding in Beechum to a set of facts very similar to those in Howell. Discussing Chambers, the Supreme Court explained in Howell:

> The trial court [in Chambers] had ordered the defendant to pay for the installation of a security system in the building that he burglarized, finding that it was "'a direct causal effect'" of the crime. [Chambers, 138 P.3d] at 414. The Kansas Court of Appeals reversed this portion of the restitution order, explaining that "the purchase of the security system was prompted by concern that [defendant], a neighbor of the victim, would reoffend, but this purchase was an example of 'tangential costs incurred as a result of a crime,' not a cost *caused* by the crime." Id. at 415.

<u>Howell</u>, 274 Va. at 741, 652 S.E.2d at 109.  Thus, as the Supreme Court noted in <u>Howell</u>, the Kansas Court of Appeals reversed the lower court's finding of a "direct causal effect" between Chambers' criminal conduct and the victim's financial loss – and concluded instead that, since the victim's financial loss was a "tangential" cost, the trial court could not order restitution for that loss because it was not a "cost *caused* by the crime."

In light of these federal and state decisions, the Supreme Court of Virginia held as a matter of law in <u>Howell</u> that restitution *does not* include financial loss that results indirectly from the defendant's criminal conduct because that loss is not "caused by the offense" under Virginia's restitution statutes, Code §§ 19.2-303 and 19.2-305(B).  Consequently, when a victim's financial loss is not directly caused by the defendant's criminal conduct, the loss is "a step removed from the defendant's conduct" – and, accordingly, the attenuation between the victim's financial loss and the defendant's conduct is "too great" to permit restitution.  <u>Howell</u>, 274 Va. at 741, 652 S.E.2d at 109.

Because this Court, of course, is bound by the decisions of the Supreme Court of Virginia, we must now apply the Supreme Court's decision in <u>Howell</u> to the facts of this case.

Here, the trial court included $60,000 in its restitution order – the loss to the victim from the damage resulting from the bursting of a water pipe inside his home that the trial court referred to as an "indirect loss."[4]  The trial court clearly considered a victim's "indirect loss" to be within the proper scope of restitution.  However, as discussed *supra*, costs to a victim "that result only indirectly from the offense" are, pursuant to the Supreme Court's decision in <u>Howell</u>,

---

[4] A determination concerning causation is a factual finding, which is binding on this Court on appeal unless plainly wrong.  <u>Lee County School Bd. v. Miller</u>, 38 Va. App. 253, 260, 563 S.E.2d 374, 377 (2002); <u>see</u> <u>Robinson v. Commonwealth</u>, 274 Va. 45, 53, 645 S.E.2d 470, 474 (2007).  In this case, the trial court's reference to the $60,000 as an "indirect loss" was undisputed – the victim himself listed this amount as an "indirect" financial loss in the "Financial Loss" section of his victim impact statement, and the Commonwealth has *never* argued that appellant's criminal conduct directly caused the damages that resulted from the pipe that burst.

"inappropriate for a restitution payment." Id. Thus, the trial court here was guided by an erroneous legal conclusion that "indirect loss" could be included in its restitution calculation. Therefore, based on Howell, the trial court's order of restitution that included $60,000 of "indirect loss" was an abuse of discretion. See Koon, 518 U.S. at 100; Porter, 276 Va. at 260, 661 S.E.2d at 445.

### III. CONCLUSION

Pursuant to the Supreme Court's decision in Howell, we conclude that the trial court abused its discretion when it ordered restitution for an "indirect" financial loss to one of appellant's victims. Accordingly, for the foregoing reasons, we reverse the portion of the sentencing order that required appellant to pay restitution for this "indirect" financial loss of the water damage to the victim's home while he was recuperating from his gunshot injuries, and we remand the case to the trial court for it to make the appropriate corrections to the amount of restitution ordered in appellant's sentencing order – consistent with the Supreme Court's decision in Howell.

Reversed and remanded.