COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Causey and Frucci


CATHERINE RENEE TELLEZ

                                         MEMORANDUM OPINION[*]

v.      Record No. 1253-24-1                      PER CURIAM
                                                 OCTOBER 21, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Noah D. Weisberg; Charles E. Haden; Weisberg & Weisberg,
PLLC, on briefs), for appellant.

(Jason S. Miyares, Attorney General; C. David Sands, III, Senior
Assistant Attorney General, on brief), for appellee.


Following a jury trial, Catherine Renee Tellez was convicted of failing to stop after

involvement in an accident that resulted in death.[1]  On appeal, Tellez contends the evidence was

insufficient to prove that she was "a proximate cause of the [accident] that resulted in [the]

decedent's death."[2]  For the following reasons, we affirm the circuit court's judgment.[3]

_____

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] Tellez was also charged with involuntary manslaughter and reckless driving.  At the
conclusion of the Commonwealth's case-in-chief, the circuit court granted Tellez's motion to
strike those charges.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument."  See Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] Tellez was indicted and convicted of failing to stop after involvement in an accident that
resulted in death in violation of Code § 46.2-894.  However, the sentencing order reflects that
she was convicted of failing to stop after involvement in an accident that resulted in death in

## BACKGROUND[4]

On the morning of August 10, 2022, Tellez was driving on Interstate 64 in the left lane. The portion of the highway had two clearly marked lanes and was straight and flat with no grade. The road surface had no major potholes, debris, gravel, or obstructions. The highway had a wide shoulder on the right side of the road and no shoulder on the left, "just grass." In front of Tellez was a truck with a ladder in it. As the truck and Tellez were traveling, the ladder started to come out of the truck, so Tellez swerved into the grass area outside the left lane to avoid the ladder. The driver of the truck pulled over into the grass area behind Tellez, checked on Tellez, who assured him that she was "good," removed the ladder from the left lane, and began to resecure it to the truck.

Meanwhile, Casey Coleman was driving a vehicle in the right lane further behind where Tellez and the truck had been driving. Coleman was traveling approximately 75 miles per hour, and another vehicle was just in front of Coleman. Initially driving a vehicle in the right lane, C.C.[5] approached Coleman and changed to the left lane. Coleman had a dashcam operating that captured much of the events that followed.[6] As C.C. passed Coleman and was beside the vehicle in front of Coleman, the three vehicles approached where Tellez and the truck were in the grass. At that time, Tellez, without using a signal, drove back into the left lane. According to Coleman, Tellez "kind of

---

violation of "[Code §] 46.2-891." We remand to the circuit court to correct this clerical error in the sentencing order. *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).

[4] "[W]e recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[5] We use initials, rather than names, to protect the privacy of the victim.

[6] The dashcam footage was entered into evidence.

appeared out of nowhere" and appeared to be going "slow, a lot slower than [C.C.] was going."[7]

Having traveled just further than the vehicle in front of Coleman, C.C. did not appear to brake or slow down, rather he swerved right to avoid a collision with Tellez.  The two vehicles did not make contact, but C.C. crashed across the embankment on the right and into the tree line.  C.C. died from blunt force trauma to his head, chest, and extremities when his car collided with the trees on the side of the highway.

After the collision, Tellez pulled over into the grass area outside the left lane.  Tellez got out of her vehicle momentarily before getting back in and leaving the area.  Tellez did not call the police, provide her information to anyone, or provide any assistance to C.C. prior to leaving.  Tellez called her supervisor at the "VCU Police Department" to inform her that there had been an incident on the road and to request to telework that day.  Tellez told her supervisor about the ladder coming down, how there were other cars involved, and how she thought maybe another vehicle had gone "off the side of the road into the woods."  However, when she later received a phone call from Trooper Gillespie of the Virginia State Police, she "panicked" and told him that she was "not aware of a car in the trees."[8]

Tellez was, in part, charged with failing to stop after involvement in an accident that resulted in death.  At the close of the Commonwealth's case-in-chief at the following jury trial, Tellez moved to strike the evidence, partly arguing that the Commonwealth failed to prove that she was the proximate cause of the collision.  The circuit court denied the motion to strike on the failing to stop after involvement in an accident that resulted in death charge.

---

[7] According to the individual driving the vehicle in front of Coleman, Tellez was not going "fast at all . . . maybe 15" miles per hour.

[8] Trooper Gillespie used Coleman's dashcam to identify Tellez's license plate number and was able to obtain Tellez's phone number from his investigation that followed.

- 3 -

Matthew Dwyer testified in Tellez's defense as a crash reconstruction expert. He opined that C.C. was traveling 85 miles per hour before he swerved, that the distance between C.C.'s vehicle and Tellez's vehicle when she initially began to pull onto the highway was 560 feet, that C.C. needed 531 feet to come to a stop at a speed of 85 miles per hour, and that 4.63 seconds had passed from the time Tellez began to pull onto the highway and C.C. "display[ed] any apparent reaction." Dwyer's calculations were based on the dashcam footage and the averages given in Code § 46.2-880 (giving tables of speeds and stopping distance), and they did not factor in any changes to the brakes or engine of C.C.'s vehicle.

At the close of the evidence, Tellez renewed her motion to strike on the same grounds. The circuit court denied the motion. The jury subsequently found Tellez guilty of failing to stop after involvement in an accident that resulted in death. Tellez moved to set aside the jury's verdict. The circuit court denied the motion. Tellez was sentenced to five years of incarceration with four years, eleven months, and twenty days suspended. Tellez appeals.

ANALYSIS

Tellez contends that the evidence was insufficient to sustain her conviction because it did not show that she was the proximate cause of the accident. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). "The only 'relevant

question [for this Court on review] is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Id.* (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *Id.* (alteration in original) (quoting *Meade*, 74 Va. App. at 806).

For a driver of a vehicle to be "involved" in an accident for the purposes of Code § 46.2-894, there must either be physical contact between that driver's vehicle and another vehicle, person, or object, or the driver must have proximately caused the accident. *See Robinson v. Commonwealth*, 274 Va. 45, 53 (2007). Here, it is uncontested that Tellez's vehicle did not make physical contact with C.C.'s vehicle. As such, the case turned on whether Tellez was a proximate cause of the accident that led to C.C.'s death. "Generally, the issue of proximate causation is a question of fact to be resolved by a jury." *Evans v. Commonwealth*, 82 Va. App. 612, 629 (2024) (quoting *RGR, LLC v. Settle*, 288 Va. 260, 292-93 (2014)). "It is only 'when reasonable people cannot differ [that] the issue becomes a question of law for the court to decide.'" *Id.* (alteration in original).

"The principles of proximate cause 'are constant whether considered in a civil or criminal context.'" *Id.* at 628 (quoting *Robinson*, 274 Va. at 53). "Because an event can have more than one proximate cause, criminal liability can attach to each actor whose conduct is a proximate cause unless the causal chain is broken by a superseding act that becomes the sole cause of the

[event]." *Id.* (alteration in original) (quoting *Rich v. Commonwealth*, 292 Va. 791, 800 (2016)). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces that event, and without which that event would not have occurred." *Ford Motor Co. v. Boomer*, 285 Va. 141, 150 (2013) (quoting *Wells v. Whitaker*, 207 Va. 616, 622 (1966)).

"The first step in determining factual causation 'is often described as the "but for" or sine qua non rule.'" *AlBritton v. Commonwealth*, 299 Va. 392, 406 n.8 (2021) (quoting *Wells*, 207 Va. at 622). Generally, conduct "is a factual cause of harm when the harm would not have occurred absent the conduct." *Boomer*, 285 Va. at 155 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26 (2010)). Applying that test here, the record supports that a rational factfinder could have found that Tellez's actions were a cause-in-fact of the accident. But for her slow, without signal, emerging suddenly into the unclear left lane, C.C. would not have swerved right and the accident would not have occurred.

"The second step in determining proximate cause asks whether a but-for cause is nevertheless so attenuated from the resulting harm that it fails to constitute a legal cause." *Evans*, 82 Va. App. at 629. Whether Tellez's actions were "too attenuated to be the legal cause of the accident here was a jury question." *Id.* at 630. It cannot be said that C.C. swerving, losing control, and crashing was an unforeseeable consequence of Tellez's actions.

Nor were C.C.'s actions a superseding cause of the accident that cut Tellez's own culpability. "A superseding cause occurs only when an intervening act so entirely supplants the operation of the initial tortfeasor's negligence that the intervening act alone, without any contributing negligence by the initial tortfeasor in the *slightest degree*, causes the injury." *Id.* at 632 (quoting *Williams v. Joynes*, 278 Va. 57, 63 (2009)). "The superseding cause must be 'a new cause of [the] injury, becoming the *only* proximate cause of that injury.'" *Id.* (alteration in

original) (quoting *Williams*, 278 Va. at 63).  Further, the "intervening act will never be deemed a superseding cause if the intervening act was set in motion by the initial tortfeasor's negligence." *Id.*  As the evidence does not support that C.C.'s acts of swerving, losing control, and crashing entirely supplant Tellez's actions, C.C.'s acts do not cut Tellez's culpability.

Since a rational trier of fact could conclude from the totality of the evidence that Tellez was a proximate cause of the accident, the evidence is sufficient to support Tellez's conviction.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment and remand to correct the clerical error in the sentencing order.

*Affirmed and remanded.*