COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
           Beales and Senior Judge Clements[*]
Argued at Richmond, Virginia


SHAKIL EDWARDS
                                                               OPINION BY
v.      Record No. 0894-07-2                          JUDGE ROBERT J. HUMPHREYS
                                                             FEBRUARY 17, 2009
COMMONWEALTH OF VIRGINIA

                              UPON REHEARING EN BANC

                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           Frederick G. Rockwell, III, Judge

        Horace F. Hunter for appellant.

        Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        This matter comes before the Court on a rehearing *en banc* following a divided panel

opinion of this Court.  Shakil Edwards (Edwards) appeals her conviction for possession of a tool,

implement or outfit with the intent to commit larceny, in violation of Code § 18.2-94.  Edwards

contends that the evidence was insufficient as a matter of law to prove that the purse she carried

at the time she committed the larceny was a tool, implement or outfit within the meaning of Code

§ 18.2-94.  For the following reasons, we agree and reverse her conviction.

                                   I.  BACKGROUND

        "Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party in the circuit court."

_____

        [*] Judge Clements participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2008, and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

Porter v. Commonwealth, 276 Va. 203, 215-16, 661 S.E.2d 415, 419 (2008). However, the facts of this case are not in dispute.

On June 23, 2006, Edwards entered a department store in Chesterfield County with three other women. Each woman carried a purse that "appeared to be concave" and not "full like a typical woman's purse looks." A department store security guard observed the women taking clothing from the children's and juniors' sections of the store and carrying it into the fitting room area. When the women exited the fitting rooms, their purses appeared "larger in size." After the women left, the security guard entered the fitting rooms, found empty hangers on the floor, and discovered that merchandise was missing from the children's and juniors' sections.

The security guard stopped Edwards and the other women after they left the store. The security guard found four items of children's clothing inside Edwards' purse. The three other women also had stolen merchandise in their purses. Other than the stolen merchandise, three of the women's purses, including Edwards' purse, were completely empty. The fourth woman had a pair of slippers in her purse. Edwards admitted that they entered the store to steal merchandise and that she had stolen the clothing found in her purse. She was arrested and subsequently charged with grand larceny and possession of a tool, implement or outfit with the intent to commit larceny.

At the conclusion of the Commonwealth's case-in-chief, Edwards moved to strike the Commonwealth's evidence, arguing that her purse was not a tool, implement or outfit. The trial court denied the motion. Edwards testified in her own defense and admitted to stealing the clothing. Edwards also explained why she carried an empty purse into the store. The trial court asked Edwards, "Why were you carrying an empty purse around?" Edwards answered, "Oh, 'cause I wanted to go to the store and steal." "And steal?" responded the judge. Edwards replied, "Yes."

At the close of her case, Edwards again moved to strike the Commonwealth's evidence on the grounds that her purse was not a "tool, implement or outfit" as contemplated by Code § 18.2-94. The court denied her motion, finding that the purse "was used to steal, and . . . it fits within the definition of burglary tools." The trial court subsequently convicted Edwards of petit larceny[1] and possession of burglarious tools. Edwards appealed her conviction for possession of burglarious tools to this Court.

On May 27, 2008, a divided three-judge panel of this Court reversed Edwards' conviction. The majority held that Edwards' purse is not a tool, implement or outfit within the meaning of Code § 18.2-94. The dissent reasoned then, as it does today, that Edwards, by emptying the purse of all its contents, "clearly used the purse for a purpose other than its ordinary, lawful one, thereby causing it to become something other than an ordinary purse." Edwards v. Commonwealth, 52 Va. App. 70, 79, 661 S.E.2d 488, 493 (2008) (Beales, J., dissenting). The dissent concluded that Edwards' purse was an "outfit" within the meaning of the statute.

The Commonwealth petitioned the full Court for rehearing *en banc*. On July 1, 2008, we granted the Commonwealth's petition and stayed the mandate of the panel opinion.

## II. ANALYSIS

On appeal, Edwards reiterates her argument that her purse is not a tool, implement or outfit. She claims that this is so because her purse "can in no way be considered innately burglarious in character." The Commonwealth argues that tools, implements and outfits need not be "innately burglarious" to fall within the scope of Code § 18.2-94 and that Edwards' purse is an "outfit," within the meaning of the statute. We agree with the Commonwealth that Code

---

[1] At trial, the Commonwealth failed to prove that the clothing Edwards stole was worth over $200. Thus, the court only convicted her of petit larceny rather than grand larceny. See Code § 18.2-95.

§ 18.2-94 does not apply only to burglarious tools, implements and outfits.  However, we disagree with the Commonwealth's characterization of the purse as an "outfit."  Thus, for the following reasons, we hold that Edwards' possession of the purse is not punishable under Code § 18.2-94.

First, contrary to Edwards' argument, Code § 18.2-94 does not apply only to "innately burglarious" items.  Code § 18.2-94 states:

> If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony.  The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.

Under a cursory reading of the statute, there appears to be a disconnect between the first and second sentences.  The first sentence criminalizes the possession of "*any* tools, implements or outfit[s]" with the intent to commit one of the listed crimes.  Id. (emphasis added).  However, the second sentence, apparently referring to the first sentence, states "*such burglarious* tools, implements or outfit[s] . . . ."  Id. (emphasis added).  One might read the word "such burglarious tools . . ." in the second sentence as modifying the first or at least indicating that the General Assembly only intended to punish the possession of *burglarious* tools, implements and outfits.

However, in Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482 (1953), the Supreme Court explained that the use of the word "such" was simply surplusage.  The Court noted that the original version of Code § 18.2-94, enacted in 1887, stated:

> "If any person ha[v]e in his possession any tools, implements, or other outfit *known as burglars' tools, implements, or outfit*, with intent to commit burglary, robbery, or larceny, he shall be deemed guilty of a felony, and on conviction thereof, shall be punished by confinement in the penitentiary not less than five nor more than ten years.  The possession of such burglarious tools, implements, or outfit, shall be prima facie evidence of an intent to commit burglary, robbery, or larceny."

- 4 -

Id. at 787-88, 75 S.E.2d at 484 (quoting Code of 1919, sec 4437) (emphasis added).  In 1919, the

General Assembly amended the statute, removing the phrase "known as burglars' tools,

implements, or outfit" from the first sentence.[2]  The Supreme Court explained the effect of that

amendment on the rest of the statute, particularly the word "such":  "The word 'such,' as

originally used was descriptive and relative, and its antecedent was 'known as burglars' tools,

implements, or outfit.'  Elimination of this antecedent *left the word meaningless*; and the

Revisors' failure to eliminate it also was obviously inadvertent."  Id. at 788, 75 S.E.2d at 484

(emphasis added).

    If, as Edwards argues, the word "burglarious" still modifies the words "tools, implements

or outfit" in the first sentence, "such" would then clearly not be meaningless.  Essentially,

Edwards contends that the statute should be read as follows:

> If any person have in his possession any [burglarious] tools,
> implements or outfit, with intent to commit burglary, robbery or
> larceny, upon conviction thereof he shall be guilty of a Class 5
> felony.  The possession of such burglarious tools, implements or

---

[2] As codified in 1919, the statute in its entirety read as follows:

> If any person break and enter the dwelling-house of another
> in the night time with the intent to commit a felony or larceny
> therein, he shall be deemed guilty of burglary, though the thing
> stolen or intended to be stolen, be of less value than fifty dollars.
> If any person be guilty of burglary, he shall be punished with
> death, or in the discretion of the jury, by confinement in the
> penitentiary for not less than five nor more than eighteen years.  If
> any person have in their possession any tools, implements or outfit,
> with the intent to commit burglary, robbery, or larceny, he shall be
> deemed guilty of a felony, and be punished by confinement in the
> penitentiary not less than five nor more than eighteen years.  The
> possession of such burglarious tools, implements, or outfit by other
> than a licensed dealer shall be prima facie evidence of an intent to
> commit burglary, robbery or larceny.

Code of 1919, Sec. 4437.  The Revisors' note referred to in Burnette immediately follows the
above paragraph and reads in full as follows:  "The phraseology of this section has been changed
so as to include common law burglary under the statute, and there is a transposition of sentences
at the beginning of the section, but no material change has been intended."  Id.

outfit by any person other than a licensed dealer, shall be prima
facie evidence of an intent to commit burglary, robbery or larceny.

Clearly, inserting "burglarious" into the first sentence gives meaning to "such" in the second sentence. Contrary to the holding in Burnette, Edwards' interpretation makes "such" "descriptive and relative" as it would clearly refer to the burglarious tools, implements and outfits mentioned in the first sentence. "Such" is only meaningless if the tools, implements and outfit in the first sentence are something broader, or at least different, from the burglarious tools, implements and outfit in the second sentence.

Reading the first sentence as applying to all tools, implements or outfits and the second sentence as applying only to burglarious tools, implements and outfits relieves any tension between the two sentences. Burnette implied as much when it explained the basis for distinguishing between ordinary tools and burglarious tools. The Court stated:

> [T]ools or implements may be, and usually are, designed and
> manufactured for lawful purposes. But it is unusual for a person,
> on a lawful mission, to have in his possession a combination of
> tools and implements suitable and appropriate to accomplish the
> destruction of any ordinary hindrance of access to any building, or
> to a vault or safe. All the statute does is to create a presumption of
> a criminal intent from proof of possession of *burglarious* tools or
> implements.

Id. at 790, 75 S.E.2d at 486 (emphasis added). Viewing burglarious tools as a subset of the larger categories of tools in the first sentence, the presumption of criminal intent in the second sentence makes sense. Code § 18.2-94 criminalizes the possession of *any* tool, implement or outfit with the requisite intent. The second sentence merely recognizes that the burglarious nature of certain tools makes it so unusual for a person to lawfully possess them, that mere possession of the tools is indicative of a criminal intent.

Construing the statute in this way is consistent with prior precedent. In Moss v. Commonwealth, 29 Va. App. 1, 5, 509 S.E.2d 510, 512 (1999), we explained "Code § 18.2-94

- 6 -

requires proof that the offending tools, implements or outfit were intrinsically 'burglarious' only when the Commonwealth relies upon the statutory presumption to establish the requisite criminal intent." We held that the Commonwealth may convict someone of possessing non-burglarious tools with the requisite criminal intent. However, it must do so "without benefit of the statutory presumption." Id. at 3, 509 S.E.2d at 511. Thus, we reject Edwards' argument that the evidence was insufficient merely because her purse was not burglarious. However, that conclusion does not end our analysis.

In order to convict Edwards under Code § 18.2-94, the Commonwealth was required to prove that Edwards' purse was either a tool, implement or outfit. "The terms 'tools,' 'implements,' and 'outfit' are not defined statutorily." Williams v. Commonwealth, 50 Va. App. 337, 342, 649 S.E.2d 717, 719 (2007). However, we have defined each of these terms in previous cases.

In Williams, we recognized that "[c]learly, the terms 'tool,' 'implement' and 'outfit' have somewhat different but overlapping meanings." Id. at 343, 649 S.E.2d at 720. Consistent with that principle, we explained that a "tool" is "an instrument (as a hammer or saw) used or worked by hand," or "an implement or object used in performing an operation or carrying on work of any kind." Id. We went on to define "implements" as "items associated with devices, instruments, equipment or machinery as they relate to an occupation or profession." Id. at 345, 649 S.E.2d at 721. In doing so, we explained that giving a broader interpretation to "tools" and "implements"

> would lead to "absurd results." See Washington [v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006)]. For example, one obvious result . . . would be that every concealment of merchandise in violation of Code § 18.2-103, regardless of the item's value, would also constitute a Class 5 felony under Code § 18.2-94 because any and every item used to accomplish the element of concealment from public view, such as a purse, coat or a pocket, would also constitute a "larcenous

implement." Had the General Assembly intended such a result,
they would have punished the crime of concealment accordingly.

Id. at 342, 649 S.E.2d at 719.

Clearly, an ordinary purse is neither a "tool" nor an "implement" as we defined those

terms in Williams. However, it remains for us to determine whether a purse constitutes an

"outfit" as contemplated by Code § 18.2-94. In doing so, we conclude that our holding that a

broad definition of tools, implements and outfits would lead to absurd results is inconsistent with

our earlier definition of "outfit." In Mercer v. Commonwealth, 29 Va. App. 380, 384, 512

S.E.2d 173, 175 (1999), we referred to "commonly accepted definitions" to define "outfit."

Those definitions are "(1) the act or process of fitting out or equipping, (2) materials, tools, or

implements comprising the equipment necessary for carrying out a particular project, and

(3) wearing apparel designed to be worn on a special occasion or in a particular situation." Id.

Of those definitions, we focused on the third one in particular.

Under Mercer's definition of outfit, the possession of any "wearing apparel" that a thief

chose to wear for the "particular" purpose of committing burglary, robbery or larceny would be

punishable under Code § 18.2-94. That broad definition of outfit would lead precisely to the

"absurd results" we warned of in Williams -- the conclusion that any and every item of apparel

used to accomplish the element of concealment from public view, such as a coat or a pocket,

would also constitute a "larcenous outfit." As we explained in Williams, the General Assembly

could not have intended that result.

The broad definition used in Mercer is also inconsistent with the traditional rule of

statutory construction known as *noscitur a sociis*. *Noscitur a sociis* is the principle that "a word

is known by the company it keeps." S. D. Warren Co. v. Maine Bd. of Envtl. Prot., 547 U.S.

370, 378 (2006). It "provides that the meaning of a word takes color and expression from the

purport of the entire phrase of which it is a part, and it must be read in harmony with its context."

Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). To define "outfit" as wearing apparel would be to distinguish it from "the company it keeps." S. D. Warren Co., 547 U.S. at 378. Rather than defining "outfit" broadly as "wearing apparel,"[3] we conclude today that the other definitions referenced in Mercer are more consistent with our previous definitions of "tools" and "implements." Indeed, as is implicit in the first definition noted in Mercer, the etymology of the term "outfit" is from the phrase "fit out" or equip, such as to outfit a ship for a voyage. See The Century Dictionary, An Encyclopedic Lexicon of the English Language 4183 (1914). In light of the definitions of the words "tools" and "implements" immediately preceding "outfit" – terms with which "outfit" has an "overlapping meaning[]," Williams, 50 Va. App. at 343, 649 S.E.2d at 720, – we overrule Mercer to the extent that it defines "outfit" as "wearing apparel"[4] and hold that, in the context of Code § 18.2-94, the appropriate definition of "outfit" is "the articles forming an equipment" or "the tools or instruments comprised in any special equipment; as a carpenter's or a surgeon's outfit." Webster's New International Dictionary of the English Language, Second Edition 1733 (1948).[5]

---

[3] "Wearing apparel" is itself a broad term and in the context of clothing, "outfit," customarily refers to a "set of garments" rather than a single item or accessory e.g. a new Easter outfit and would not, in any event, include a purse which is carried rather than worn. See Oxford's English Dictionary 1015 (1989).

[4] Although we overrule Mercer's definition of outfit, we do not pass judgment on whether the pants worn by the appellant in Mercer fall within the scope of the statute. Furthermore, contrary to the dissent's assertion, we do not hold that clothing can never be considered a tool, implement or outfit within the meaning of the statute.

[5] This definition is also consistent with an aggregation of otherwise innocent items, assembled specifically for one of the criminal purposes prohibited by the statute such as those inventoried by the Supreme Court in Burnette:
> a loaded 32-caliber Colt's blue steel revolver, two new 10 inch
> hacksaw blades in a brown paper bag, . . . one pair of white cotton
> gloves; . . . one 36 inch pick, one 30 inch wrecking bar; one 3
> pound sledge hammer; one 18 inch screw driver; one two-cell

Under that definition, we hold that an ordinary purse is not "special equipment" for the purpose of shoplifting. The fact that Edwards deliberately emptied the purse in order to facilitate a theft does not change that fact. Emptying the purse to conceal stolen items does not convert the purse into a shoplifter's "outfit" anymore than slipping a hammer into one's belt would convert the belt into a tool belt and thus make it part of a carpenter's "outfit." Thus, in the case before us, Edwards' purse does not constitute a larcenous "outfit" within the meaning of Code § 18.2-94.

### III. CONCLUSION

For these reasons, we hold that the trial court erred in holding that the evidence was sufficient as a matter of law to prove that Edwards violated Code § 18.2-94. Therefore, we reverse her conviction and dismiss the indictment for that offense.

<u>Reversed and dismissed.</u>

---

flashlight, one inch steel drill bit, and one 7/16 inch steel drill bit; . . . four inch steel drill bits; and . . . one pair of work gloves . . . ."

<u>Burnette</u>, 194 Va. at 791, 75 S.E.2d at 486.

Felton, C.J., with whom Elder and McClanahan, JJ., join, concurring.

I concur with that portion of the majority opinion that concludes that appellant's purse is not a "tool[], implement[] or outfit" within the meaning of Code § 18.2-94, and therefore concur in the judgment it reaches. I write separately to express my view that <u>Burnette v. Commonwealth</u>, 194 Va. 785, 75 S.E.2d 482 (1953), and the legislative history of Code § 18.2-94, constrains this Court to construe Code § 18.2-94 as prohibiting only the possession, with the requisite intent, of "burglarious tools," i.e., those tools, implements, or outfit that are "suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building, or to a vault or safe." <u>Burnette</u>, 194 Va. at 790, 75 S.E.2d at 486.

The statute creating the crime of possessing "burglarious tools, implements or outfit" was part of legislation first adopted by the General Assembly in 1878 (Acts of 1877-78, p. 288), and as the <u>Burnette</u> Court noted, the statute read:

> "Any person who shall be guilty of burglary, shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary for a period not less than five nor more than eighteen years. If a person break and enter the dwelling-house of another in the night time, with intent to commit larceny, he shall be deemed guilty of burglary, though the thing stolen, or intended to be stolen, be of less value than twenty dollars. If any person ha[v]e in his possession any tools, implements, or other outfit *known as burglars' tools, implements, or outfit*, with intent to commit burglary, robbery, or larceny, he shall be deemed guilty of a felony, and on conviction thereof, shall be punished by confinement in the penitentiary not less than five nor more than ten years. The possession of such burglarious tools, implements, or outfit, shall be *prima facie* evidence of an intent to commit burglary, robbery, or larceny."

<u>Burnette</u>, 194 Va. at 787-88, 75 S.E.2d at 484.

The 1878 statute codified burglary as it then existed and created a statutory offense to possess "burglarious tools, implements, or other outfit known as burglar's tools, implements, or

outfit, with the intent to commit burglary, robbery or larceny . . . . " The "burglarious tools, implements or outfit" in the statute were "known as burglar's tools." Id.

The statute continued in that form without change in the Code of 1887 as section 3704. However, in 1919 the language of the statute was altered by transposing several sentences, and included the definition of common law burglary and omitted the descriptive phrase "known as burglar's tools, implements, or outfit." The 1919 Code Revisors' note to the amended code section stated: "The phraseology of this section has been changed so as to include common law burglary in the definition of burglary under the statute, and there is a transposition of sentences at the beginning of the section, *but no material change has been intended*." Burnette, 194 Va. at 788, 75 S.E.2d at 484.

At its 1950 Session, the General Assembly recodified the earlier statute as Code § 18-159. The recodified statute included the same two criminal provisions, burglary and the possession of "burglarious tools" with the requisite intent, as was in the 1919 statute.

In 1953, in Burnette, the Supreme Court, considering a constitutional challenge to the evidentiary presumption contained in Code § 18-159, noted that:

> [t]he statutory crime with which defendant is charged consists of two essential elements: (1) possession of *burglarious tools*; and (2) an intent to commit burglary, robbery, or larceny therewith. The burden was upon the Commonwealth to prove possession of such tools by defendant beyond a reasonable doubt. The statute makes possession *prima facie* evidence of the criminal intent.

Id. at 792, 75 S.E.2d at 487 (emphasis added). There the Supreme Court clearly declared that

> [t]he mere possession of burglarious tools is not a crime under the statute. It is possession with intent to use them to commit a crime. The tools or implements may be, and usually are, designed and manufactured for lawful purposes. But it is unusual for a person, on a lawful mission, to have in his possession a combination of tools and implements suitable and appropriate to accomplish the

- 12 -

> destruction of any ordinary hindrance of access to any building, or
> to a vault or safe.

Id. at 790, 75 S.E.2d at 486. It concluded that the combination of tools at issue there,

> a loaded 32-caliber Colt's blue steel revolver, two new 10 inch
> hacksaw blades . . . , [] one pair of white cotton gloves[,] . . . one
> 36 inch pick, one 30 inch wrecking bar[,] one 3 pound sledge
> hammer[,] one 18 inch screw driver[,] one two-cell flashlight, one
> 1/2 inch steel drill bit, one 7/16 inch steel drill bit[,] . . . four 1/4
> inch steel drill bits[,] . . . [and] one pair of work gloves with buck
> palms and cotton backs[,]

while designed for, and adaptable to, lawful uses, "were implements and tools commonly used by house breakers and safe crackers," which "prove[d] that they were 'burglarious tools' within the meaning of the statute." Id. at 791, 792, 75 S.E.2d at 486, 487.

Subsequently, at its 1960 session, the General Assembly recodified Code § 18-159, creating two separate statutes embodying the two substantive offenses formerly contained in Code § 18-159: Code § 18.1-61 (burglary) and Code § 18.1-87 (possession of "burglarious tools, implements or outfit"). At its 1975 session, the General Assembly again recodified Code § 18.1-87, this time as Code § 18.2-94, the code section under which appellant was convicted. It placed Code § 18.2-94 in Chapter 5, Article 2 of Title 18.2, entitled "Burglary and Related Offenses."

Since its inception in 1878, the crime of possession of "burglarious tools" has been combined with and associated with the crime of burglary. That the General Assembly has since 1878 continually placed the statutory offense of possession of "burglarious tools" in that part of the Code pertaining to burglary demonstrates, in my view, that the General Assembly intended to retain the close historical connection between the offenses of the possession of "burglarious tools, implements or outfit" and burglary. Expanding the meaning of "burglarious tools, implements or outfit" beyond "a combination of tools and implements suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building, or to a vault or

safe," is, in my view, a departure from its historical mooring, particularly considering the legislative history of the "burglarious tools" statute and the Supreme Court's analysis of Code § 18.2-94's predecessor, Code § 18-159, in Burnette.

In my view, this Court, in Mercer v. Commonwealth, 29 Va. App. 380, 512 S.E.2d 173 (1999), erroneously began a journey away from the established construction of the "burglarious tools" statute, finding that an altered pair of pants, used to facilitate shoplifting, was a "larcenous outfit." While I concur in the judgment of the majority overruling Mercer "to the extent that it defines 'outfit' [under Code § 18.2-94] as 'wearing apparel,'" in my view, the majority errs in not overruling our holding in Mercer in its entirety.

Accordingly, while I concur in the judgment of the majority in concluding that appellant's purposefully emptied purse, used to conceal merchandise which she had stolen, was not a "tool" within the meaning of Code § 18.2-94, I am unable to join in its rationale, which in my view unnecessarily expands those items made criminal by Code § 18.2-94 to include items not "suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building, or to a vault or safe." Burnette, 194 Va. at 790, 75 S.E.2d at 486. If the General Assembly had desired to expand the statutory definition of "any tool[], implement[] or outfit" beyond that which, in my view, is compelled by the existing statute, it clearly could have done so.

Beales, J., with whom Kelsey and Haley, JJ., join, dissenting.

Although I agree with the majority that Code § 18.2-94 does not solely criminalize possession of just "burglarious" tools, implements, and outfits, I would find here, given appellant's preparation of her purse before she entered the store so that it better assisted her with her plan to commit larceny by inconspicuously stealing merchandise, that the trial court did not err in convicting her under Code § 18.2-94. Therefore, I must dissent from the majority opinion.

Code § 18.2-94 criminalizes the possession of "any tools, implements *or* outfit, with intent to commit burglary, robbery *or* larceny" (emphasis added), as a Class 5 felony. The legislature's use of the term "or" twice in this statute is important, both linguistically and conceptually, because the placement of "or" in these lists creates two sets of disjunctive variables, thus creating nine combinations of words: burglary tools, larcenous outfits, robbery implements, and so on. Thus, the statute by its plain language prohibits the possession of nine categories of items, if the perpetrator possesses any of them with the requisite criminal intent. The one thing the statute clearly does not do — as its title misleadingly suggests[6] — is criminalize *only* possession of *just* burglary tools, that is, tools (not implements or outfits) possessed with the intention to use them in the commission of burglary (not robbery or larceny). See Moss v. Commonwealth, 29 Va. App. 1, 3-4, 509 S.E.2d 510, 511 (1999) (noting, "The gravamen of the offense arises from the possessor's 'intent to use' these 'common, ordinary' objects [tools, implements, or outfits] for a criminal purpose specified by statute, *burglary,*

---

[6] Although Code § 18.2-94 is titled "Possession of Burglarious Tools, Etc.," that title does not add an additional element to the crime or dictate the actual elements of the crime proscribed by that statute. See Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976) ("[T]he summary title is not part, and does not determine the meaning, of the body of a statute."); Brown v. Commonwealth, 215 Va. 143, 146, 207 S.E.2d 833, 836 (1974) ("[U]se of the word 'jurisdiction' in the summary title is not controlling. The summary title is not part of the body of the statute . . . ."). At most, "burglarious tools" provides a shorthand phrase for the behavior criminalized in Code § 18.2-94.

- 15 -

*robbery or larceny*.").  Therefore, I agree with the majority opinion that a trial court can convict a defendant under Code § 18.2-94 for possessing a larcenous outfit, even where the evidence did not prove that the outfit was also burglarious.

However, after reviewing the facts in this case and the relevant law, I must respectfully disagree with the majority opinion's conclusion that possession of this purse was not criminal behavior as defined by Code § 18.2-94.  In the case currently before us, appellant chose a particular purse, emptied it, and carried it into the store with the admitted intention to use the purse to hide items that she was stealing from the store.  Thus, the issue in this case is whether a purse, purposefully emptied of everything that it would ordinarily contain so that it can be used for shoplifting, can be considered a larcenous "outfit."  As opposed to the majority opinion's definition of "outfit," I define "outfit" by reference to the plain meaning of the term and our previous precedent, and, therefore, I would find the trial court did not err in finding appellant violated Code § 18.2-94 when she prepared and carried the purse into the store with the intention to use the purse as an aid to her plan to steal from the store.  Therefore, I must dissent.

When "a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used."  See Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998).  I would hold that, looking at the plain meaning of the word, an "outfit" includes, among other things, "wearing apparel *with accessories* designed to be worn on a special occasion or in a particular situation or setting."  Webster's Third International Dictionary 1601 (1981) (emphasis added); see American Heritage Dictionary 797 (2d ed. 1991); Mercer v. Commonwealth, 29 Va. App. 380, 384, 512 S.E.2d 173, 175 (1999).  Therefore, the trial court did not err in convicting appellant under Code § 18.2-94.

- 16 -

When I consider the archetypal burglar's outfit, I imagine a black jumpsuit with multiple pockets for stowing tools, perhaps topped off by a black ski mask and a sack for carrying away the loot. Appellant, however, was a shoplifter, not a burglar. She had no reason to put on a conventional burglar's outfit, which would have defeated her purpose by, contrary to her intention, actually drawing attention to her presence in the store rather than, as she hoped by carrying the purse, allowing her to blend into the crowd. Appellant wanted everyone to think that she was just another shopper out spending her paycheck. Rather than hiding in the shadows, appellant, as a shoplifter, needed an inconspicuous container in which to conceal stolen merchandise that also allowed her to blend in with the crowd. For appellant, as a female shoplifter, perhaps the most obvious and best option for an outfit that would assist in her larcenous intent was a large purse that she emptied before entering the store. Therefore, looking at the evidence in the light most favorable to the Commonwealth, as we must when a defendant appeals her conviction, I would find the trial court did not err in convicting appellant of violating Code § 18.2-94. See Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004).

The majority opinion, instead of deferring to the ordinary meaning of "outfit," proposes to define "outfit" as "the tools or instruments comprised in any special equipment; as a carpenter's or a surgeon's outfit." This definition ignores the plain meaning of "outfit" and instead defines the term such that it has no meaning apart from "tool" or "implement." This new definition of the term runs counter to the "elementary rule of statutory construction that every word in the statute must be given its full effect if that can be done consistent with the manifest purpose of the act." Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n, 181 Va. 811, 819, 27 S.E.2d 159, 162 (1943). Under the analysis used in the majority opinion – despite the majority opinion's assertion in footnote 4 – clothing apparently is not actually included in the list of prohibited items under Code § 18.2-94, perhaps even if it is altered to

- 17 -

conceal the theft, as occurred in <u>Mercer</u>.[7] Thus, a purse or pocketbook specifically carried into a store to conceal stolen items is not included under the statute, under the definition advocated by the majority opinion. "Outfit," under the majority opinion's interpretation of this term, simply becomes the plural of "tool" and "implement," effectively deleting "outfit" from Code § 18.2-94.[8] Therefore, I cannot agree with the majority opinion's definition of "outfit" as it simply renders the term superfluous. As this Court stated in <u>Williams v. Commonwealth</u>, 50 Va. App. 337, 344 n.4, 649 S.E.2d 717, 720 n.4 (2007), "[T]o the extent that the terms [in Code § 18.2-94] may be interchangeable, we can only conclude that the General Assembly did not view the terms as such, but rather, found the differences to be of importance." The majority opinion's definition eviscerates the important differences between these three terms.

------

[7] Contrary to the view expressed in the majority opinion, I believe <u>Mercer</u> was properly decided. The holding in <u>Mercer</u> is consistent with the plain language of the statute, allowing a conviction under Code § 18.2-94 if the person possesses an "outfit" intending to use it to commit "larceny," one of the nine classes of objects proscribed under that statute. In addition, it is interesting to note that the appellate history of <u>Mercer</u> includes the denial of Mercer's petition for review by the Supreme Court of Virginia. <u>Mercer v. Commonwealth</u>, Rec. No. 990848 (Va. Aug. 2, 1999).

[8] The majority opinion suggests in a footnote that "outfit" still has meaning because a collection of innocent items becomes an "outfit," citing <u>Burnette v. Commonwealth</u>, 194 Va. 785, 75 S.E.2d 482 (1953), as an example. However, each of the items in the collection listed in <u>Burnette</u> would become a burglarious tool based on the suspect's intended use of the item, rendering the term "outfit" unnecessary even in this context. Cf. <u>Carter v. Commonwealth</u>, 223 Va. 528, 290 S.E.2d 865 (1982) (affirming conviction for possession of a burglarious tool where the defendant possessed an unaltered screwdriver). And, it should be noted, the <u>Burnette</u> opinion did not address burglarious *outfits*; instead, it addressed "burglarious tool*s*," since the Commonwealth argued only that the items possessed by Burnette were tools used to commit burglary. <u>Id.</u> at 791-93, 75 S.E.2d at 486-87 (emphasis added). The Commonwealth did not argue that Burnette possessed a burglarious outfit or implement, so the opinion did not address the meaning of those terms. Thus, the Court in <u>Burnette</u> affirmed a conviction for possession of a set of tools without recourse to the term "outfit." Thus, contrary to the majority opinion's suggestion, <u>Burnette</u> actually proves, if the majority opinion's definition of "outfit" is correct, that the term "outfit" is essentially meaningless as the term "tool" subsumes the term "outfit." In other words, even if the statute did not include the word "outfit," Burnette's conviction would have been affirmed as he possessed burglarious *tools*.

In support of its definition, the majority opinion expresses concern that the every day definition of "outfit" would allow every instance of hiding stolen merchandise in a pocket to fall under Code § 18.2-94. I find this position unpersuasive and, thus, disagree with the majority opinion's analysis on this point.

First, I believe this concern is more appropriate to an argument in the policy context involving the appropriate language to use in a statute, as opposed to a legal analysis in an appellate opinion addressing the actual language used in a statute. An appellate court examines the language of a statute to determine what behavior the General Assembly intended to criminalize; it is not the role of the courts to evaluate the wisdom of the language codified by the legislature. Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). Under the explicit language in Code § 18.2-94, only people possessing the criminal intent to commit burglary, larceny, or robbery can be convicted, since the legislature in its drafting of this statute placed that specific limitation on prosecutions under this statute. If the General Assembly had intended to restrict convictions under Code § 18.2-94, then that body could have deleted the word(s) "tool" or "implement" or "outfit." The General Assembly also could have included only the intention to commit "burglary" and left out the intention to commit "larceny" and "robbery." However, the General Assembly did not enact either of these versions of the statute. Thus, this Court must address the language actually used in the statute, which includes the term "outfit."

Second, although a panel of this Court noted in Williams, 50 Va. App. at 346, 649 S.E.2d at 721, that "Had the General Assembly intended such a result, they would have punished the crime of concealment accordingly," I do not believe that affirming this conviction here would result by any means in the punishment of every concealment. As noted in the panel dissent in this case, Edwards v. Commonwealth, 52 Va. App. 70, 78, 661 S.E.2d 488, 492-93 (2008), appellant here prepared the purse by emptying it of its contents, with the admitted purpose of

- 19 -

using the now-empty purse to conceal stolen property and help her take that property out of the store. She had no other purpose for carrying the purse. To her, it existed solely as a means to commit larceny. When asked at trial why she had carried the empty purse into the store, appellant plainly admitted that she had the purse because she "wanted to go to the store and steal." The evidence did not provide any other reason for her possession of the purse nor did the evidence even hint that the purse had any other use besides assisting appellant with her attempted larceny.

To me, this fact differentiates appellant's situation from a shoplifter who places a stolen item in a purse that is otherwise being used normally. The pocketbook in such a situation would not fall under the proscription in Code § 18.2-94 because the thief possessed it primarily for an innocent purpose. Here, in contrast, appellant went to some trouble before entering the store, planning this part of her outfit so that it served her criminal purpose rather than any innocent one. She had no innocent reason for possessing the purse when she entered that store – instead, she had it with her as "special equipment" to aid her in her larceny. Therefore, I do not believe we, as an appellate court, should second-guess both the trial court's finding and appellant's own characterization of the item as specifically intended, and only intended, so that she could "go to the store and steal." Carter, 223 Va. at 532, 290 S.E.2d at 867 ("[T]he verdict of the trial court will not be disturbed unless it appears to be plainly wrong or without evidence to support it."). Based on the foregoing analysis, I would find that the evidence was sufficient to convict Edwards under Code § 18.2-94, and I would affirm her conviction. Consequently, I must respectfully dissent from the majority opinion.

# VIRGINIA:

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*   **1st**   *day of*   **July, 2008**.

Shakil Edwards,                                                                                                          Appellant,

 against            Record No. 0894-07-2
                   Circuit Court Nos. CR06F01719-01 and CR06F01719-02

Commonwealth of Virginia,                                                                                 Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On June 9, 2008 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on May 27, 2008, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on May 27, 2008 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the

appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


SHAKIL EDWARDS

OPINION BY
v.      Record No. 0894-07-2      CHIEF JUDGE WALTER S. FELTON, JR.
MAY 27, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Horace F. Hunter for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Shakil Edwards (appellant) was convicted of petit larceny in violation of Code § 18.2-96,

and possession of a burglarious tool in violation of Code § 18.2-94.  Appellant contends the

evidence was insufficient as a matter of law to convict her of violating Code § 18.2-94,

contending that the purse she possessed at the time she committed larceny was not a burglarious

"tool."[1]  For the following reasons, we conclude that appellant's purse was not a "tool,"

"implement," or "outfit" within Code § 18.2-94.  We reverse appellant's conviction for

possession of a burglarious tool and dismiss that indictment.

I.  BACKGROUND

The facts are not in dispute.  On June 23, 2006, appellant entered a department store in

Chesterfield County with three other women.  Each woman carried a purse that "appeared to be

concave" and not "full like a typical woman's purse looks."  A department store loss prevention

_____

[1] Appellant's conviction for petit larceny is not before us on appeal.

officer (security officer), using a closed-circuit television monitoring system, observed the women taking clothing from the children's and juniors' sections of the store and carrying those items into an area consisting of separate fitting rooms. The women entered the fitting room area one or two at a time, each using one of two fitting rooms located "at the end" of that area. As the women exited the fitting rooms, their purses appeared "larger in size." Once the women left, the security officer entered the fitting rooms, found empty hangers on the floor, and discovered that merchandise was missing from the children's and juniors' sections.

Appellant and the other women were detained after they left the store. Appellant had four items of children's clothing valued at $156 concealed inside her purse. The three other women also had stolen merchandise in their purses. Other than the stolen merchandise, three of the four women's purses were completely empty.[2] The women admitted they entered the store to steal merchandise.

A Chesterfield County police officer was called to the scene. Appellant admitted that she had stolen the items in her purse from the department store. She was arrested and charged with grand larceny in violation of Code § 18.2-95, and possession of burglarious tools in violation of Code § 18.2-94.

At trial, appellant moved to strike the evidence at the conclusion of the Commonwealth's case-in-chief. She argued that her purse was not a burglarious tool. The trial court denied the motion, concluding that appellant intentionally entered the department store with an empty purse to conceal the stolen merchandise. During her testimony, appellant admitted to stealing children's clothing. When asked why she was "carrying an empty purse around," she stated, "'cause I wanted to go to the store and steal.'" She renewed her motion to strike at the conclusion of the evidence, arguing again that her purse was not a burglarious tool. The court

_____

[2] The fourth woman's purse contained one pair of slippers.

denied appellant's motion, finding that the purse "was used to steal, and . . . it fits within the statutory definition of burglar[ious] tools."[3] Appellant was convicted of possession of burglarious tools and grand larceny. At the sentencing hearing on March 27, 2007, the court vacated the grand larceny conviction, and found appellant guilty of petit larceny of the clothing appellant concealed inside her purse. She was sentenced to twelve months imprisonment for petit larceny, with six months suspended, and five years imprisonment for possession of burglarious tools, all of which was suspended. This appeal followed.

## II. ANALYSIS

On appeal, appellant concedes she entered the department store intending to use the purse she was carrying to commit larceny, but argues that a purse is not a burglarious tool within the meaning of Code § 18.2-94. The Commonwealth contends that, because appellant intended to use an empty purse to conceal merchandise, the purse is an "outfit" under Code § 18.2-94. Our task on appeal is to determine whether the legislature intended to consider an empty purse used to facilitate shoplifting a "tool," "implement," or "outfit" under Code § 18.2-94. "Because this is a question of law involving the construction and application of Code § 18.2-94, we review the trial court's determination *de novo*." Williams v. Commonwealth, 50 Va. App. 337, 340, 649 S.E.2d 717, 718 (2007).

"Violations of Code § 18.2-94 are sometimes referred to generally as 'possession of burglary tools.'" Moss v. Commonwealth, 29 Va. App. 1, 3 n.1, 509 S.E.2d 510, 511 n.1 (1999). However, "Code § 18.2-94 is somewhat broader than its title implies." Williams, 50 Va. App. at 340, 649 S.E.2d at 718. It provides:

> If any person have in his possession any tools, implements or
> outfit, with intent to commit burglary, robbery or larceny, upon

---

[3] While the trial court concluded the purse constituted a "burglarious tool" under the statute, it did not make a specific finding that the purse was a "tool," "implement," or "outfit" within the meaning of the statute.

conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary or larceny.

"Code § 18.2-94 requires proof that the offending tools, implements or outfit were intrinsically 'burglarious' only when the Commonwealth relies upon the statutory presumption to establish the requisite criminal intent." Moss, 29 Va. App. at 4-5, 509 S.E.2d at 512. The presumption embraced by the statute applies only to "such offending articles innately *burglarious* in character, [that is] those commonly used by burglars in house breaking or safe cracking[,]" id. at 4, 509 S.E.2d at 511, "[and] particularly 'suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building . . . vault or safe,'" id. (quoting Burnette v. Commonwealth, 194 Va. 785, 790, 75 S.E.2d 482, 486 (1953)) (alteration in original). Here, appellant conceded that she intended to use the empty purse she carried into the department store to steal merchandise and, therefore, the Commonwealth was not required to rely on the statutory presumption that a purse is "innately burglarious in character." Consequently, we focus our discussion on whether the General Assembly intended to criminalize the use of a purse as a "tool," "implement," or "outfit" within the requirements of Code § 18.2-94.

"The terms 'tools,' 'implements,' and 'outfit' are not defined statutorily." Williams, 50 Va. App. at 342, 649 S.E.2d at 719. However, each has been defined in previous decisions of this Court. "The generally accepted definitions of 'tool' are (1) an instrument ([such] as a hammer or saw) used or worked by hand, and (2) an implement or object used in performing an operation or carrying on work of any kind." Id. at 343, 649 S.E.2d at 720 (citing Webster's Third New International Dictionary 2408 (1993)). "[T]he term 'implement' [] refer[s] specifically to items associated with devices, instruments, equipment or machinery as they relate

- 4 -

to an occupation or profession, but which are used to facilitate the commission of a burglary, robbery or larceny." Id. at 345, 649 S.E.2d at 721.

> The commonly accepted definitions for the word "outfit" include (1) the act or process of fitting out or equipping, (2) materials, tools, or implements comprising the equipment necessary for carrying out a particular project, and (3) wearing apparel designed to be worn on a special occasion or in a particular situation.

Mercer v. Commonwealth, 29 Va. App. 380, 384, 512 S.E.2d 173, 175 (1999) (citing Webster's Third New International Dictionary 1601 (1993)). "'Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest.'" Id. (quoting Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994)).

Because a purse is neither "an instrument used or worked by hand," nor "an implement or object used to carry on work," we cannot conclude that appellant's use of an empty purse to conceal stolen merchandise meets the generally accepted definition of a "tool." Likewise, in Williams, where we declined to include an empty bag used to conceal merchandise as a larcenous "implement," we also noted the absurdity of extending the definition of "implement" to include a purse, as a purse is not an item that specifically relates to an occupation or profession. Williams, 50 Va. App. at 346, 649 S.E.2d at 721. Finally, although in Mercer, 29 Va. App. at 385, 512 S.E.2d at 175, we held that a pair of pants altered to facilitate shoplifting constituted an "outfit" under Code § 18.2-94, we cannot conclude from the plain language of the statute that the General Assembly intended to include the carrying of an empty purse within the meaning of an "outfit" under Code § 18.2-94. To extend the holding of Mercer under these facts would require an overly broad interpretation of the term "outfit," rather than one "'strictly construed against the state and limited in application to cases falling clearly within the language of the statute.'" Williams, 50 Va. App. at 344, 649 S.E.2d at 720 (quoting Robinson v.

- 5 -

Commonwealth, 274 Va. 45, 52, 645 S.E.2d 470, 474 (2007)).  Similar to our analysis in

Williams, when discussing the need to impose a *reasonable* interpretation of the term

"implement," we also conclude that an overly broad interpretation of the term "outfit" would

result in

> every concealment of merchandise in violation of Code
> § 18.2-103, regardless of the item's value, . . . constitut[ing] a
> Class 5 felony under Code § 18.2-94 because any and every item
> used to accomplish the element of concealment from public view
> [would satisfy the definition of an "outfit"].  Had the General
> Assembly intended such a result, they would have punished the
> crime of concealment accordingly.

Id. at 345-46, 649 S.E.2d at 721.  See also, Matter of Charlotte K, 427 N.Y.S.2d 370, 371 (N.Y.

Fam. Ct. 1980) ("The tools, instruments or other articles envisioned by [the statute] . . . are those

used in taking an item and not in hiding it thereafter.  They are the handy gadgets used to break

in and pick up, not the bags for carrying out.").  Although appellant admitted that she carried an

empty purse into the department store on June 23, 2006, because she wanted to "go to the store

and steal," we cannot conclude that her intent to conceal stolen merchandise in her purse

transformed that purse into a burglarious "tool," "implement," or "outfit."

### III.  CONCLUSION

We conclude that the purse appellant possessed at the time she committed petit larceny

was not a burglarious "tool," "implement," or "outfit."  Therefore, the evidence presented at trial

was insufficient as a matter of law to sustain a conviction under Code § 18.2-94.  Accordingly,

we reverse the judgment of the trial court, vacate appellant's conviction, and dismiss that

indictment.

Reversed and dismissed.

Beales, J., dissenting.

I respectfully dissent. I believe that the evidence in this case supports the trial court's factual conclusion that appellant's purse fit within the definition of "outfit" that we articulated in Mercer v. Commonwealth, 29 Va. App. 380, 512 S.E.2d 173 (1999).

As a preliminary matter, the majority applies a *de novo* standard of review to decide this issue, citing Williams v. Commonwealth, 50 Va. App. 337, 340, 649 S.E.2d 717, 718 (2007). In Williams, this Court reviewed *de novo* the term "implement," found in the same statute at issue in this case, Code § 18.2-94, and defined that term for the first time. Since this Court had not previously defined that term in the context of Code § 18.2-94, a *de novo* review on an issue of statutory interpretation was entirely appropriate in that case. However, we have already defined the term at issue here, "outfit," in our decision in Mercer. Therefore, I believe that we must here actually apply a mixed standard of review. I submit that we must review the trial court's decision and determine whether the evidence in this record supports the trial judge's conclusion that appellant's purse fits within our previously articulated definition of the term "outfit."[4]

In Mercer, we defined "outfit," in the context of its use in Code § 18.2-94, as follows: "The commonly accepted definitions for the word 'outfit' include (1) the act or process of fitting out or equipping, (2) materials, tools, or implements comprising the equipment necessary for

_____

[4] Even though the trial court did not specifically find which category of burglarious tool appellant's purse fit within, our standard of review directs us to affirm the trial court's decision if the empty purse fits within any one of the three categories of burglarious tools. See generally Gilliam v. Commonwealth, 49 Va. App. 508, 513-14, 642 S.E.2d 774, 778 (2007) (affirming a conviction for carrying a concealed weapon, in violation of Code § 18.2-308.2, where "[t]he trial court made no specific findings . . . [and] never enunciated which description [of a concealed weapon] provided the basis for its finding of guilt." Nevertheless, "on appeal, if there are facts to support the trial court's conclusion that the knife is either one of the enumerated items within the statute, or a 'weapon of like kind,' [this Court is] bound by that conclusion.").

That being said, I am confident -- given the arguments of the parties at trial (specifically, the analogies made to a hat and a pair of pants) and the reference by the trial court to pockets in a pair of pants -- that the issue at trial and on appeal has been sufficiently focused on whether or not appellant's empty purse was an "outfit" for purposes of the burglarious tool statute.

carrying out a particular project, and (3) wearing apparel designed to be worn on a special occasion or in a particular situation." 29 Va. App. at 384, 512 S.E.2d at 175. Finding that the pair of pants Mercer had altered to commit larceny was a burglarious tool (burglary tool), we held, "An item of clothing that is altered to facilitate shoplifting can reasonably be considered wearing apparel designed to be worn in a particular situation." Id. at 385, 512 S.E.2d at 175.

In this case, appellant used a purse to facilitate her theft of clothes from the store. The trial court, in my estimation, quite reasonably concluded that a purse may be a part of a woman's outfit. However, this purse – or part of appellant's outfit – was not being used as a woman normally uses a purse when appellant carried it with her into the store. This purse did not contain any of the items normally found in a purse. To the contrary, it was completely empty so as to enable this woman to accomplish her admitted purpose of taking it into the store[5] – i.e., to steal by using it to steal and conceal considerable merchandise. Thus, while the inside of the purse had not had additional pockets sewn into it, as had been done to the pants in Mercer, the pocketbook/purse had been changed from the normal state of a purse and was carried with an entirely different purpose than a purse would normally be carried – much as the pants were altered in Mercer so that they could be used to conceal merchandise and allow the defendant in Mercer to steal. In both cases, this was done to conceal the merchandise that was taken. As such, I believe that the trial court correctly found that the purse in this case fits within the definition we used in Mercer. Thus, I find this case more analogous to Mercer than it is to

---

[5] The trial court asked appellant the following questions when appellant/defendant testified at trial:

> Q: Why were you carrying an empty purse around?
> A: Oh, 'cause I wanted to go to the store and steal.
> Q: And steal?
> A: Yes.

- 8 -

Williams (in which we held that an ordinary plastic bag was not an "implement" and, therefore, a burglarious tool, for purposes of a conviction under Code § 18.2-94).

> That being said, I recognize that the mere possession of "any tools, implements, or outfit" is not prohibited by [Code § 18.2-94]. Such articles "may be, and usually are, designed and manufactured for lawful purposes." The gravamen of the offense arises from the possessor's "intent to use" these "common, ordinary" objects for a criminal purpose specified by statute, burglary, robbery or larceny.

Moss v. Commonwealth, 29 Va. App. 1, 3, 509 S.E.2d 510, 511 (1989) (quoting Burnette v. Commonwealth, 194 Va. 785, 790, 75 S.E.2d 482, 486 (1953)). Following that logic, I certainly do not believe or suggest that every purse satisfies the definition of a burglary tool. Here, though, appellant clearly used the purse for a purpose other than its ordinary, lawful one, thereby causing it to become something other than an ordinary purse. Like the three other women who went into the store with her and also had empty purses (or in one case, an almost empty purse), appellant completely emptied the purse *before* she went into the store in order to carry out her admitted intent to steal. The purse did not have any money or a wallet in it so as to enable her to purchase an item, did not contain any identification, or contain anything else. This to me differentiates what this appellant did with this purse from a shoplifter who places an item in a purse that is otherwise being used normally (or perhaps empties an item out of a purse while in the store so as to conceal an item that the individual decides to steal). While still a crime of larceny, the pocketbook used in such a situation would probably not be a burglarious tool because it was being used primarily as a pocketbook. Here, appellant went to some trouble and planning to use part of her outfit in a way that it would normally never be used. She essentially had no purpose for that part of her outfit when she entered that store, but to use it to steal.

The General Assembly could have limited burglarious tools to "tools" and "implements," but chose to include the word "outfit" in the statute. By choosing to include the word "outfit" in

Code § 18.2-94, the General Assembly clearly intended to include items plainly defined as such in the definition of burglary tools. Otherwise, I believe the legislature would have simply included only the words "tools" and "implements." Moreover, since the statute also does not provide any special definition for the term "outfit," we are bound to apply that term according to its plain and ordinary meaning, as we did in <u>Mercer</u>, 29 Va. App. at 384, 512 S.E.2d at 175. <u>See also</u> <u>Lee County v. Town of St. Charles</u>, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002) ("When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language."). I believe that, by reversing the trial court's conclusion that appellant's purse fits within the plain and ordinary meaning of an "outfit" under this statute, this Court essentially holds that a purse or pocketbook may never be considered a burglary tool pursuant to Code § 18.2-94. That is a conclusion I cannot reach.

Therefore, for the foregoing reasons, I would affirm the trial court and appellant's conviction for possession of a burglary tool, in violation of Code § 18.2-94. I believe that the evidence supports the trial court's conclusion that appellant's purse, which she emptied before entering the store with the express intent to use it to steal, was changed from an ordinary item customarily associated with a woman's outfit into a means to facilitate theft. It, therefore, fits within the definition of "outfit" that we set forth in <u>Mercer</u>. It is for those reasons that I must respectfully dissent.